STATE OF NORTH CAROLINA v. OBADIAH JAY STAFFORD

No. 8321SC726

(Filed 7 February 1984)

1. **Homicide § 21.7— second degree murder—sufficiency of evidence**

   There was substantial circumstantial evidence tending to show an intentional shooting done without legal excuse so as to support submission of an issue of second degree murder to the jury, although there was also evidence tending to show that defendant acted in self-defense.

2. **Criminal Law § 39— admission of tape on rebuttal—transcript admitted during case in chief—no abuse of discretion**

   Although a transcript of a tape recording of a conversation between defendant and the investigating officer was admitted into evidence during the State's case in chief, the trial court did not abuse its discretion in admitting the tape recording into evidence in the rebuttal phase of the trial where the tape recording was largely exculpatory.

APPEAL by defendant from *Mills, Judge.* Judgment entered 2 February 1983 in Superior Court, FORSYTH County. Heard in the Court of Appeals 19 January 1984.

Defendant was charged in a proper bill of indictment with second degree murder and found guilty as charged. From a judgment entered on the verdict imposing the presumptive prison sentence of fifteen years, defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*White and Crumpler, by Fred G. Crumpler, Jr., and David R. Crawford, for defendant, appellant.*

HEDRICK, Judge.

[1] Defendant's Assignment of Error Nos. 1 and 3-5 raise the question whether the evidence was sufficient to require submission of the case to the jury and to support the verdict of second degree murder. The evidence adduced at trial by the State tended to show the following:

On 2 September 1982 the defendant, known as "Buddy" Stafford, and the deceased, David Willard, went to the home of Andy Holcomb. Mr. Holcomb, testifying for the State, stated that the deceased became angry at the defendant, "sort of slapped Buddy around," and "told him if you're lying to me, I'm going to kill you." The defendant persuaded Mr. Holcomb to accompany him to the deceased's house, claiming to be afraid of the deceased. When the trio left Mr. Holcomb's house, the witness put a pistol in the car, "because after I saw him slap Buddy around . . . I figured he was a dangerous fellow." He informed the defendant of the location of the gun.

When they arrived at the victim's house, according to the witness, the deceased took the keys to the ignition and refused to return them. Following an altercation, the deceased put a knife to the witness's throat and threatened to kill him. The witness testified to what followed:

> [A]t that time Buddy pulled the gun out from the floorboard and told David to drop the knife and throw us the keys and David made out like he was trying to be friendly with Buddy

and everything and he threw the knife toward Buddy and he said I don't want the knife, I want the keys because I want to leave and he picked up the knife and he was walking toward Buddy and Buddy kept backing up the whole time and he told David to stop and throw him the keys and David said just stay here, we'll go off tonight and then Buddy fired a shot in the air and David was still walking toward him and he said Buddy, put the gun up and Buddy said I want the keys and we'll leave and then he took another step and that's when Buddy shot over David's head again and at that point, he sort of run or lunged or whatever you want to call it, at Buddy and when he was about six feet away from Buddy, Buddy shot him and I guess after that, David hit the ground, he fell back behind the car we was in and Buddy had cocked it again and pulled the trigger and he got up beside his foot so that made four shots fired in all. . . .

The defendant then dragged the body of the deceased "ten or fifteen feet" "out of the way," and left the crime scene. Both made formal statements that, while generally consistent with Mr. Holcomb's testimony, contained several discrepancies.

Other evidence presented by the State was to the effect that Mr. Willard "was violent and very mean" "when he was drinking," and that he had been drinking heavily on the night of the shooting. The testimony of several witnesses suggested that the victim did not possess the knife later found at the scene of the crime. A pathologist who performed an autopsy on the victim testified "that the bullet came from behind . . . and from a little above the head . . . and went forward." He also testified that if the victim had "been on his knees at the time he was shot," that would have been "consistent with the wound that he received" and "with the path of the bullet."

"Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Wilkerson*, 295 N.C. 559, 577, 247 S.E. 2d 905, 915 (1978) (citations omitted). "[M]alice is not restricted to spite or enmity toward a particular person. It also denotes a wrongful act intentionally done without just cause or excuse. . . ." *Id.* at 578, 247 S.E. 2d at 916.

Defendant contends that "the State's evidence in the case at issue negated the existence of an unlawful killing" because "[a]ll the evidence tends to show" that the defendant acted in self-defense. It is true, as defendant asserts, that a motion to dismiss should be granted "when the State's evidence and that of the defendant is to the same effect, and tend only to exculpate the defendant." *State v. Carter,* 254 N.C. 475, 479, 119 S.E. 2d 461, 464 (1961). Such are not the facts of this case, however. While there was evidence tending to show that defendant acted in self-defense, there was also substantial circumstantial evidence tending to show an intentional shooting done without legal excuse. "The credibility and sufficiency of defendant's evidence to establish his plea of self-defense were for the jury to evaluate in the light of the court's instructions." *State v. Smith,* 268 N.C. 659, 662, 151 S.E. 2d 596, 598 (1966), *cert. denied,* 386 U.S. 1032, 18 L.Ed. 2d 593, 87 S.Ct. 1481 (1967). Accordingly, we find no error in the refusal of the trial court to dismiss the charge against the defendant.

[2] Defendant next contends that the court "committed prejudicial error by admitting into evidence a tape recorded conversation between defendant and investigating officer." Defendant attacks admission of the recording on two grounds: he first argues that the State "failed to establish a proper chain of custody," and, second, that the recording impermissibly repeated in the rebuttal phase of the trial evidence brought out during the State's case in chief.

The record discloses that the tape recording in question contained the formal statement made by defendant to arresting officers after he was taken into custody. A transcript of the recording was admitted into evidence without objection during the State's case in chief. The contents of the statement are generally consistent with defendant's claim that he acted in self-defense.

We do not believe the trial court committed prejudicial error in admitting the recording into evidence. In regard to defendant's first asserted ground for exclusion of the recording, we note defendant's objection at trial: "[h]e's already read the statement that's made from this tape." No mention of "chain of custody" was made at that time. "A specific objection, if overruled, will be effective only to the extent of the grounds specified." 1 Brandis on

North Carolina Evidence Sec. 27 (2d rev. ed. 1982). Nor do we find merit in defendant's argument that the repetition of testimony might have caused the jury to give "undue weight . . . to that evidence." As defendant concedes, "the question of rebuttal testimony is generally subject to the sound discretion of the trial court," and "will not be interfered with unless it is abused." *State v. Johnson,* 23 N.C. App. 52, 57, 208 S.E. 2d 206, 210, *cert. denied,* 286 N.C. 339, 210 S.E. 2d 59 (1974). Under these circumstances, where the evidence admitted was largely exculpatory, we think it quite clear that there was no such abuse of discretion.

No error.

Judges HILL and EAGLES concur.